UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| FRANK INMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:15-cv-00512-JAW |
| | ) | |
| BANGOR HOUSING AUTHORITY, | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this removed action, Plaintiff Frank Inman alleges that Defendant Bangor Housing Authority unlawfully denied his application for housing and failed to conduct a hearing on his appeal of its administrative decision. Plaintiff requests a court order directing that Defendant provide him with housing. (Complaint, ECF No. 1-3.)

The matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 9.) Plaintiff has not opposed the motion. Following a review of the pleadings, and after consideration of Defendant's arguments, I recommend the Court grant the motion.

### BACKGROUND FACTS[1]

Defendant Bangor Housing Authority is a municipal housing authority created under the laws of the State of Maine; it administers a public housing program in the Bangor area. (Defendant's Statement of Material Facts ("DSMF") ¶ 1, ECF No. 9-1.) When an individual applies for housing through the program, a leasing specialist employed by Defendant determines

---

[1] In support of its motion, Defendant filed a Local Rule 56 statement of material facts. Because Plaintiff failed to object to the motion or otherwise controvert Defendant's statement of facts, which are supported by citation to record evidence, Defendant's facts are deemed admitted for purposes of the summary judgment analysis. *See* D. Me. Loc. R. 56(f).

whether the applicant qualifies for admission to public housing pursuant to the terms of Defendant's Admissions and Continued Occupancy Policy ("ACOP"). (*Id.* ¶¶ 2 – 3.)

The ACOP defines Defendant's policies regarding the operation of the program, and sets forth the standards that govern the review and processing of applications. (*Id.* ¶ 3.) The ACOP incorporates state and federal law and has been reviewed and accepted by the United States Department of Housing and Urban Development. (*Id.* ¶¶ 3 – 4.)

On January 10, 2014, Plaintiff submitted a pre-application for housing with Defendant. (DSMF ¶ 5.) On January 16, 2014, Heidi Lancaster, a leasing specialist, notified Plaintiff of Defendant's receipt of his pre-application, advised Plaintiff that Defendant would process his pre-application within the next 12 months, and informed him that he would have an opportunity to appeal should his pre-application be denied. (*Id.* ¶¶ 6, 7.)

Approximately one year later, on January 7, 2015, Defendant advised Plaintiff that it was updating its waiting list and informed him that if he wanted to remain on the waiting list, he must so advise Defendant by January 30, 2015.[2] (*Id.* ¶ 8.) At that time, Defendant still had not processed Plaintiff's pre-application. (*Id.* ¶ 9.) Plaintiff timely responded to preserve his place on the waiting list. (*Id.* ¶ 11 – 12.)

On July 29, 2015, Heidi Libby, a leasing specialist, informed Plaintiff that upon review of his pre-application, Defendant determined that the information it had regarding Plaintiff's criminal history, if accurate, would result in the denial of Plaintiff's application. (*Id.* ¶ 13.) Defendant provided Plaintiff with a copy of the record upon which it relied. (*Id.*) In the letter by which Defendant notified Plaintiff, Defendant also informed Plaintiff that pursuant to HUD guidelines,

---

[2] Federal law permits housing authorities to maintain waiting lists. 42 U.S.C. § 1437d(r).

he had ten calendar days to dispute the accuracy and relevance of the information Defendant used to deny him admission. (*Id.* ¶ 14.)

On August 5, 2015, Plaintiff responded to Defendant, and asked, among other things, that Defendant not deny his admission based on his criminal record. Plaintiff, however, did not dispute the accuracy or the relevance of the information. (*Id.* ¶ 15.) On August 10, 2015, Ms. Libby again wrote to Plaintiff. In this letter, Ms. Libby informed Plaintiff that Defendant had thoroughly reviewed his pre-application, and denied the application due to Plaintiff's criminal history. (*Id.* ¶ 16.) Through the letter, Defendant informed Plaintiff that he could request a hearing on the decision within 14 days. (*Id.* ¶ 17.)

Defendant next received a letter from Plaintiff two months later, on October 15, 2015. (DSMF ¶ 18.) The next day, Ms. Libby informed Plaintiff that because he failed to request a hearing within 14 days of Defendant's denial of the pre-application, Plaintiff had been removed from the waiting list. (*Id.* ¶ 19.)

Defendant denied Plaintiff's pre-application because Plaintiff did not meet the criteria for public housing assistance because he had committed a Class C burglary in Maine in 2013. (*Id.* ¶ 20.) Section 8.4 of Defendant's ACOP recites Defendant's grounds for denial of public housing. Among the grounds listed is the following:

> F. Have a history of criminal activity by any household member involving crimes of physical violence against persons or property and any other criminal activity including drug-related criminal activity that would adversely affect the health, safety, or well-being of other tenants or staff or cause damage to the property[.]

(ECF No. 9-14.) The opportunity Defendant provided to Plaintiff to challenge the decision complied with, or exceeded, the informal review process set forth in Defendant's ACOP. (*Id.* ¶¶ 21 – 23; ACOP § 8.5, ECF No. 9-15.)

**DISCUSSION**

In his complaint, Plaintiff asserts that Defendants engaged in "intentional unconstitutional actions" by denying his pre-application for subsidized housing based on his criminal history and by denying him a decision on his appeal. (ECF No. 1-3, PageID # 6.) Plaintiff further alleges that his application was for "disabled housing" based on "mental and medical complications." (*Id.*) Through its motion, Defendant contends the record establishes that Defendant considered Plaintiff's appeal, that it provided Plaintiff an opportunity for an informal hearing that he did not request, and that it denied Plaintiff's pre-application based on Plaintiff's criminal history.

### A.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks

omitted)).  Unsupported claims are properly dismissed.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

**B.    Analysis**

Plaintiff contends Defendant's reliance on criminal history to deny his pre-application and its failure to decide his appeal constitute constitutional violations.  Plaintiff's claim is in essence a due process claim.  Defendant argues that summary judgment is appropriate (1) because Plaintiff's interest in public housing was inchoate and, therefore, does not warrant procedural protection; and (2) because Plaintiff was afforded due process insofar as he received advance notice of the denial of his application and has an opportunity to be heard.  (Motion at 5 – 7, ECF No. 9.)  Defendant otherwise asserts that denial of housing to an applicant based on a criminal record of Class C burglary does not violate either federal or state law.  (*Id.* at 7 – 8, 10.)

Because Plaintiff asserts that Defendant violated the Constitution, Plaintiff's claim is governed by 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...

*See, e.g., DeCambre v. Brookline Hous. Auth.*, No. 15-1458, 2016 WL 3254739, at *8 (1st Cir. June 14, 2016) (citing *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 639 (1st Cir. 2013) (Section 1983 provides cause of action for constitutional due process claims)).[3]

---

[3] It is less clear whether Plaintiff could maintain a § 1983 claim based exclusively on the denial of his housing application.  *DeCambre v. Brookline Hous. Auth.*, No. 15-1458, 2016 WL 3254739, at *8 (1st Cir. June 14, 2016).  In any event, as discussed herein, it is not apparent from the record that Defendant violated the United States Housing Act or related regulations.

While Plaintiff refers to a disability in his complaint, the Court does not construe the complaint to assert a claim of housing discrimination under the Fair Housing Act because Plaintiff does not suggest that Defendant's denial of his application was influenced by a negative consideration of a disability.  *See*, *generally*, 24 C.F.R. § 960.103 ("The

5

The Due Process Clause prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "This guarantee has both substantive and procedural components." *Pagán v. Calderón,* 448 F.3d 16, 32 (1st Cir. 2006).

Substantive due process primarily protects fundamental rights. *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 107 (1st Cir. 2015). If the issue does not concern fundamental rights, a substantive due process violation exists only if the facts demonstrate the deprivation of an established life, liberty, or property interest through governmental action that can be fairly described as irrational or conscience shocking. *Id.*; *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 145 (1st Cir. 2016).

"Procedural due process protects a right to a fundamentally fair proceeding." *Teng v. Mukasey*, 516 F.3d 12, 17 (1st Cir. 2008). "To establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.'" *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13 (1st Cir. 2011) (quoting *Aponte–Torres v. Univ. of P.R.,* 445 F.3d 50, 56 (1st Cir. 2006)). Where a protected interest is at stake, the basic guarantee of procedural due process is that the individual receive notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* "No rigid taxonomy exists for evaluating the adequacy of state procedures in a given case; rather, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)). "[A]n inquiring court must balance a myriad of factors, including the

---

[public housing authority] must administer its public housing program in accordance with all applicable equal opportunity requirements imposed by contract or federal law …"). In any event, even if such a claim were advanced, the undisputed summary judgment record before the Court establishes that Defendant's denial of Plaintiff's pre-application was based on Plaintiff's criminal history given that Plaintiff has failed to introduce any evidence suggesting that Defendant's decision was influenced by the existence of a disability.

private and public interests involved, the risk of an erroneous deprivation inherent in the procedures employed by the state, and the likely benefit that might accrue from additional procedural protections." *Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)). "Whether the deprivation was, in fact, justified is not an element of the procedural due process inquiry." *Id.*

### *1.   Plaintiff's interest in public housing*

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). Given that Plaintiff had not acquired and thus had no interest in the public housing benefit he seeks, Plaintiff's application for public housing would not appear to be a property interest subject to due process. *See also Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir. 1981) (holding that interest in government employment does not constitute "property" within the meaning of the Fourteenth Amendment); *Gregory v. Town of Pittsfield*, 479 A.2d 1304, 1307 (Me. 1984) (holding that there is no property interest in general assistance benefits).

### *2.   Substantive due process*

Plaintiff's application for public housing does not involve a fundamental right presumptively entitled to substantive due process protection. *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1283 – 84 (11th Cir. 2001) ("The rights provided in the Housing Act of 1937 and its subsequent amendments arise from congressional notions of sound policy not constitutional necessity."). Additionally, even assuming, arguendo, that Plaintiff's application involves a liberty or property right, Defendant's reliance on Plaintiff's criminal history as a disqualifying factor is neither irrational nor conscience-shocking.

First, the use of criminal history as a criterion in the application process is in accord with the applicable regulations. The Department of Housing and Urban Development (HUD) requires

housing authorities "to establish and adopt written policies for admission of tenants." 24 C.F.R. § 960.202(a)(1).  HUD requires that housing authorities establish "[o]bjective and reasonable policies for selection … among otherwise eligible applicants, including requirements for applications and waiting lists."  *Id.* § 960.202(a)(2)(iv).  HUD regulations specifically award "points" to authorities "that have adopted policies, implemented procedures and can document that they successfully screen out and deny admission to certain applicants with unfavorable criminal histories."  *Id.* § 960.203(b).  "This policy takes into account the importance of screening to public housing communities and program integrity, and the demand for assisted housing by families who will adhere to lease responsibilities."  *Id.*

Federal regulations also require authorities to "consider all relevant information," including a "history of criminal activity involving crimes of physical violence to persons or property and other criminal acts which would adversely affect the health, safety or welfare of other tenants."  *Id.* § 960.203(c)(3).  Simply stated, Defendant's negative treatment of a criminal history involving Class C burglary is consistent with any applicable federal law or regulation.

In fact, while Plaintiff's criminal history does not categorically preclude his participation in a public housing program, *see id.* § 960.203(d), an applicant's commission of a burglary is a permitted and rational basis for selection among applicants for public housing assistance.  *Talley v. Lane*, 13 F.3d 1031, 1035 (7th Cir. 1994) (holding that determination of ineligibility for housing benefits based on serious criminal activity has a rational basis).  Accordingly, to the extent Plaintiff's complaint can be construed to allege a substantive due process right to participate in Defendant's housing program, Defendant is entitled to summary judgment.[4]

---

[4] This determination also rules out an equal protection claim.  *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 107 (1st Cir. 2015), *cert. denied,* 136 S. Ct. 808, 193 L. Ed. 2d 714 (2016) ("For both equal protection and substantive due process, when plaintiffs do not allege that a fundamental right is affected, they are required to show that the governmental infringement is not rationally related to a legitimate government purpose.").

### 3.     *Procedural due process*

The procedure employed by Defendant is also consistent with federal regulatory requirements. The Department of Housing and Urban Development requires that before a housing authority can deny admission based on an applicant's criminal history, the authority must provide prior notice and an opportunity to dispute the significance of the criminal record:

> (c) Use of criminal records. Before a PHA [public housing authority] denies admission to the PHA's public housing program on the basis of a criminal record, the PHA must notify the household of the proposed action to be based on the information and must provide the subject of the record and the applicant with a copy of the criminal record and an opportunity to dispute the accuracy and relevance of that record. (See part 5, subpart J of this title for provisions concerning access to criminal records.)

24 C.F.R. § 960.204(c). Defendant's ACOP explicitly sets forth a process for notice and an opportunity to be heard on any adverse decision. (ACOP § 8.5, ECF No. 9-15.) In accordance with the ACOP, the uncontroverted evidence establishes that Defendant notified Plaintiff of his right to challenge the accuracy and significance of his criminal history, but Plaintiff did not provide Defendant with any evidence that would suggest the criminal history information upon which Defendant relied was in any way inaccurate. He also failed timely to assert his right to a hearing. In short, Plaintiff cannot prevail on a procedural due process claim. [5]

---

[5] It also appears that Maine law affords judicial review of decisions rendered by municipal housing authorities. 30-A M.R.S. § 4741(1). The existence of post-deprivation review in state court would reinforce the conclusion that state procedures are adequate to protect a person's interest in obtaining public housing. *See Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 547 n. 12 (1985) ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures.").

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendant's Motion for Summary Judgment. (ECF No. 9.)[6]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 29th day of July, 2016.

---

[6] Defendants also ask the Court to conclude that no genuine issue exists as to Defendant's adherence to state law. (Motion at 10.) I do not construe Plaintiff's complaint to assert a claim based on the violation of state law. Because Plaintiff has not asserted a state law claim, the recommendation is to grant summary judgment on and enter judgment in favor of Defendant on all claims asserted.